HOLTQUIST *v.* O'CONNELL.

1. INTOXICATING LIQUORS — CIVIL-DAMAGE ACT — TRIAL — INSTRUCTIONS.

In an action by a wife under the civil-damage act (section 20, Act No. 313, Pub. Acts 1887, 2 Comp. Laws 1915, §'7050), against saloonkeepers to recover for the death of her husband claimed to be due to burns received by falling into a hot pond while intoxicated by liquor bought from such saloonkeepers, *held*, that the charge, when considered as a whole, was not misleading on the ground

that it permitted a recovery although deceased was not intoxicated when he fell into the pond.

2. TRIAL—COERCION—JURY—CONDUCT OF COURT.

Where, after a jury had been out some time, they returned without reaching a verdict and the court admonished them to reach a verdict if their consciences would ·permit, and they were advised of the expense to the county and to the litigants in trying the case, such action of the court was not an attempt to coerce a verdict, amounting to reversible error.[1]

3. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

A new trial, in an action by a wife under the civil-damage act to recover for the death of her husband due to falling into a hot pond while intoxicated by liquor purchased from defendants, on the ground of newly-discovered evidence consisting of alleged contradictory statements made in proofs of claim for insurance on the life of her husband, is properly denied, where they were made by a physician, are not in fact inconsistent, and it does not appear that plaintiff had knowledge of the statements nor that by due diligence defendant could not have procured the testimony in time for the trial.

Error to Mackinac; Shepherd, J. Submitted April 13, 1917. (Docket No. 112.) Decided May 31, 1917.

Case by Matilda Holtquist against Daniel O'Connell and another under the civil damage act for the unlawful sale of intoxicating liquors to plaintiff's husband. Judgment for plaintiff. Defendants bring error. Affirmed.

*C. W. Dunton, M. H. Baxter,* and *A. F. Bunting,* for appellants.

*Brown & Brown (Henry Hoffman,* of counsel), for appellee.

MOORE, J. It is the claim of the plaintiff that her

[1] The question of coercion of disagreeing jury by court is discussed in a note in 16 L. R. A. 643.

husband, while in a state of intoxication caused by drinking liquor obtained at the saloon of defendant O'Connell, after he had been forbidden to sell to Mr. Holtquist, fell into a hot pond and suffered such severe burns that he died some days later. This case was brought to recover her damages. From a judgment in her favor for $2,000, the case is brought here by writ of error.

The important errors argued are:

(1) In the charge of the court to the jury;
(2) That the trial judge coerced the verdict; and
(3) That the court erred in refusing to grant a new trial.

1. Did the court err in his charge? Counsel say intoxication is a prerequisite to recovery under the provisions of section 20 of the so-called civil damage act (Act No. 313, Pub. Acts 1887 [2 Comp. Laws 1915, § 7050]), and that the charge permitted a recovery though Mr. Holtquist was not intoxicated when he fell into the hot pond. Among other authorities cited is the case of *West* v. *Leiphart & Co.*, 169 Mich. 354 (135 N. W. 246).

We quote from the brief of counsel:

"The defendants requested the court to charge the jury. They are as follows:

"'(1) A person is intoxicated when it is apparent that he is under the influence of liquor, or when his manner is unusual or abnormal and his inebriated condition is reflected in his walk or conversation, when his ordinary judgment and common sense are disturbed, or his usual will power is temporarily suspended; when these or similar symptoms result from the use of liquors and are manifest, then a person is intoxicated within the meaning of the statute.

"'(2) If you find that Peter Holtquist was not intoxicated on December 17, 1914, within the definition above given, but, on the contrary, was suffering from pains and scalds instead of intoxication, then your verdict must be no cause of action so far as any damages for the death of Peter Holtquist is concerned.'

"The court gave request No. 1, but gave request No. 2 with the following modification:

" *'The Court:* Do you object to that, Mr. Brown?

" *'Mr. Brown:* Yes, your honor; I do.

" *'The Court:* Unless you find, I will insert here, unless you find that the sale of liquor that afternoon whether or not he was intoxicated, was a contributing cause towards his accident. In that case, the defendants would be liable whether he was intoxicated or not, if what drinks he did have contributed to that result.'

"The court was requested to charge the jury, by request No. 5, as follows:

" *'(5)* If you find that plaintiff's husband was intoxicated when he came to his death, and that O'Connell or his servants furnished liquor which contributed to that intoxication, still you must find a verdict of no cause of action unless Peter Holtquist was a man in the habit of becoming intoxicated, and I charge you that a man is in habit of becoming intoxicated when it is his usual or ordinary conduct to become intoxicated as above defined, whenever and wherever opportunity affords and he no longer has the will power to withstand the temptation.'

. "The court started to read this request, and had read a part of it, when the following occurred:

" *'The Court:* If you find that plaintiff's husband was intoxicated when he came to his death, and that O'Connell or his servants furnished liquor which contributed to that intoxication, still you must find a verdict of no cause of action. I think I will strike that out. Erase that.

" *'Mr. Dunton:* Which request was that?

" *'The Court:* The fifth.

" *'Mr. Baxter:* It explains it further on in the charge there, if the court please.

" *'The Court:* I refuse the fifth.

" *'Mr. Hoffman:* That may be correct so far as exemplary damages are concerned, but not actual damages.

" *'The Court:* Well, I will modify that. If you will find that, plaintiff's husband was intoxicated at the time he came to his death, and that Mr. O'Connell furnished liquor which contributed to that intoxication, still you must find a verdict of no cause of action unless Peter Holtquist was a man in the habit of becoming intoxicated; and I charge you that a man is in the habit of being intoxicated when it is his usual or ordinary

conduct to become intoxicated whenever and wherever opportunity affords and he no longer has the will power to withstand the temptation.

"'*Mr. Hoffman:* We withdraw our objection.

"'*The Court:* You withdraw your objection to No. 5 as read?

"'*Mr. Hoffman:* Yes, your honor.

"'*The Court:* But I will modify it to this extent: Aside from the intoxication, if the sale of liquor that afternoon contributed to the accident, then the defendant is liable and the plaintiff is entitled to recover. (Addressing Mr. Brown:) That is your claim, isn't it?

"'*Mr. Brown:* Yes that is our claim.'

"Later on in the charge the following occurred:

"'*Mr. Hoffman:* Now there is just one other point I am not entirely clear about in your charge. Now it is incumbent upon the plaintiff to prove that the defendant sold liquor to the deceased on the day in question while he was intoxicated, or he must be a man in the habit of becoming intoxicated, whether he knew that or not, in order to make him liable.

"'*The Court:* That is conceded by the plaintiff to be the law, is it?

"'*Mr. offman:* Yes, we concede that to be the law.

"'*The Court:* I will modify my charge somewhat, as given, gentlemen, at the suggestion of the plaintiff's attorney. I withdraw the statement which I made that the defendants would be liable if the mere sale of liquor contributed to the result. The plaintiff concedes that it is not the law. (I supposed they claimed it was, and nothing had been said to the contrary upon the other side.) That is withdrawn. It is now conceded that the defendants are not liable unless there was an illegal sale of liquor. Unless whisky—or not whisky, necessarily—but unless intoxicating liquor was sold to Mr. Holtquist at O'Connell's place that afternoon when he was intoxicated, or when he was in the habit of becoming intoxicated, it is conceded that the defendants are not liable for the injury which occurred there that afternoon.' "

These extracts from the charge should be read in connection with what preceded and followed them. The charge is too long to quote in its entirety, but the judge said to the jury:

"It is the claim here that Mr. Holtquist met his

death because of the liquor that he had bought at the defendant's place of business in Engadine.

"It is also claimed that the plaintiff was injured in her means of support because of the fact that he was sold liquor at defendant's place.

"It is also claimed that he was in the habit of becoming intoxicated, and that the liquor that he purchased there was purchased under a violation of the law, under a disregard of plaintiff's right as a wife, and that therefore she is entitled to, not only for the actual money loss that she has sustained, but because of the feelings of sorrow and indignation she has suffered because of the wrongdoing of the defendant.

"So you see there are several elements going to make up the claim of the plaintiff, which I will define more in detail when I come to read a portion of my charge.

"The defendant says that on the day in question no liquor was sold to Mr. Holtquist, and that therefore the sale of liquor could not have contributed in any degree to the unfortunate circumstances that occurred on the 17th day of December, 1914.

"The defendant says, and has introduced testimony in the line of his defense, that Mr. Holtquist was not a person addicted to the drinking of liquor; that he did not furnish liquor to, and that no liquor was ever sold him when he was in an intoxicated condition.

"So you see that you have a very sharp conflict of testimony in this case. The allegations made upon the part of the plaintiff are strenuously denied upon the part of the defendant; so it devolves upon you to decide the several questions of fact here presented. Did Mr. O'Connell, by himself or by his clerk or agent, sell whisky to Mr. Holtquist upon the day in question? Did the drinking of Mr. Holtquist of that liquor sold to him in Mr. O'Connell's saloon contribute to the accident that occurred there that evening, which resulted in his death.  *  *  *

"The plaintiff must prove each and every element in her case by a preponderance of the evidence, that is, that evidence which outweighs or is more convincing; and, if she fails to do so on any one or more material elements in the case, then your verdict must be no cause of action. I also charge you that the accident itself is no evidence of intoxication."

After the jury had been out for a time and were recalled, the judge said to them:

"If there were illegal sales of liquor which contributed to the death of that man in the hot pond, and those sales were made by the defendant, then she would be entitled to recover her loss of support. If they were made by the defendant and the defendant knew that Mr. Holtquist was in the habit of becoming intoxicated, then she would be entitled to damages to her feelings also; but, if there were no illegal sales, or if the sales that were illegally made did not contribute to the death of Mr. Holtquist—were not the cause of his becoming scalded—why then she is not entitled to recover."

The evidence was in dispute, the issue was clear-cut. When the charge is taken as an entirety, we think it clear the jury was not misled.

2. Did the trial judge coerce the verdict? This claim is based upon the following:

"The jury had been out for a time when they returned into court and the following occurred:

"*The Court:* Is there a prospect of your agreeing soon?

"*Foreman:* There is not. I don't think we will agree at all. One of the jurors is quite flat-footed about his position.

"*The Court:* I cannot listen to any discussion. I hope, gentlemen, you will use every endeavor that your conscience will permit to agree on a verdict. It is difficult for twelve men to become of one mind, but it usually can be done. Of course, you must bear in mind that you owe it to your conscience not to decide contrary to what you think the facts were. That comes first; that is the important thing—the most important thing. But remember that we are all human, and our first impressions are not always the correct ones. Listen patiently to each other's arguments and views. Perhaps, there may be more in the other fellow's views than you think for. Of course, I have no idea of how you stand. I do not wish to know, only I will ask you to take into consideration the expense to the county

and the expense to the litigants trying the case—trying a case like this—and see if you cannot conscientiously and fairly bring your minds together and agree upon a verdict. Don't have such a pride in your own opinion that you will do a wrong in order to say that you have made the other fellow come to you, or the other fellows, as the case may be. Just be fair and candid and listen to and weigh the other fellow's arguments. Just ask yourselves the question, each one of you: Am I giving as much weight to the arguments of the other side as I ought to do? Put yourselves in an unprejudiced attitude and try to arrive at a verdict."

It is said this amounted to coercion, and counsel cite the case of *Snowden* v. *Railway Co.*, 194 Mich. 87 (160 N. W. 414).

The opinion in the case cited had not been handed down when the instant case was tried. The trial judge in the instant case emphasized the fact that the verdict must have the approval of the conscience of the juror. For the reason stated in *Snowden* v. *Railway Co., supra,* we decline to reverse the case because of that part of the charge we have quoted.

3. Did the court err in refusing to grant a new trial? Much stress is laid upon the proposition that because of new evidence the motion of defendant should have been granted. It is claimed that plaintiff obtained a sum of money because of a policy of insurance held by her husband, and that in the proofs of her claim statements are made that are inconsistent with her present claim. The trial judge was of the opinion that the showing made was not of that positive, direct and effective character that would warrant the court in believing it would influence a jury in the rendition of their verdict. The so-called inconsistent statements were made by a doctor. An examination of them do not show they are inconsistent with the claim made in the case before us. It is not shown that plaintiff had knowledge of the statements, nor

that by due diligence defendant could not have procured the testimony in time for the trial.

The other assignments of error have been examined, but do not call for discussion.

The judgment is affirmed, with costs to the plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.